UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

NERY EDUARDO AREVALO,

                              Petitioner,

-vs-                                                 DECISION and ORDER

                                                           21-CV-6380 CJS

MERRICK B. GARLAND, Attorney General,
THOMAS FEELEY, Field Office Director for
Detention and Removal, Buffalo Field Office,
Bureau of Immigration and Customs Enforcement,
JEFFREY SEARLS, Field Office Director
Buffalo Federal Detention Facility ("BFDF"),

                              Respondent.
_____

INTRODUCTION

Nery Eduardo Arevalo ("Petitioner"), proceeding *pro se*, commenced this habeas proceeding pursuant to 28 U.S.C. § 2241 ("Section 2241") against Respondent ("Respondent" or "the Government"), challenging his continued detention in the custody of the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), pending the completion of removal proceedings against him.  Petitioner, who has been held in ICE custody since September 16, 2020, pursuant to 8 U.S.C. § 1226(a), alleged that "he ha[d] been detained in immigration custody for over 7 months even though no neutral decisionmaker – whether a federal judge or immigration judge – ha[d] conducted a hearing to determine whether this

1

lengthy incarceration [was] warranted based on danger or flight risk[.]"[1] That assertion was incorrect, since an Immigration Judge ("IJ") had granted Petitioner a bond hearing months before Petitioner filed this action, at which the IJ purportedly found that Petitioner was a danger to the community based on criminal charges that were then pending against him.[2]  Additionally, shortly after Petitioner filed this action he received a second custody hearing before an IJ, at which the IJ found that the Government had proven by clear and convincing evidence that Petitioner was a danger to the community and a flight risk.   For these reasons, and because Petitioner has not otherwise shown that he is in custody in violation of the Constitution or laws or treaties of the United States, the Petition is denied.

## BACKGROUND

Unless otherwise noted, the facts as set forth below are taken from the petition and portions of the administrative record in this action.[3]  In that regard, in response to the Petition the Government filed an Answer and Return, along with various documents from the administrative record. (ECF No. 5).   Petitioner did not file any response thereto or dispute the facts contained therein, though the Court gave him the opportunity to do so. See, Order, ECF No. 3 (granting Petitioner 25 days in which to respond to the Government's submission).

---

[1] Pet., ECF No. 1 at p. 1.
[2] ECF No. 5-2 at p. 109.
[3] See, especially ECF Nos. 5-1 & 5-2.

Petitioner is a native and citizen of Guatemala, who entered the United States at an undetermined time and place in violation of this Country's immigration laws. Petitioner has worked and lived in at least three states, namely, California, Connecticut and New York. This is known because Petitioner was arrested in each of those locations, as discussed below.

On December 10, 2018, the Government commenced removal proceedings against Petitioner by issuing a Notice to Appear charging him with being removable as an alien present in the U.S. without being admitted or paroled, under INA § 212(a)(6)(A)(i)(I). Petitioner obtained several adjournments of the proceedings.

On June 18, 2019, Petitioner was arrested in California and charged by the San Joaquin County Sheriff's Office with three counts of felony batter on a custodial officer, a misdemeanor charge of disorderly conduct and a misdemeanor charge of obstructing justice/resisting arrest. Petitioner was convicted of assault and sentenced to "four months and two weeks" in jail.[4]

Petitioner obtained continuances of the removal hearing, and eventually filed an application for asylum and withholding of removal. The hearing on that application was scheduled for May 29, 2020.

In the meantime, on January 10, 2020, an arrest warrant was issued for Petitioner in Connecticut following an incident in which he, under the influence of drugs

---

[4] ECF No. 5-2 at p. 111.

and/or alcohol, engaged in a fight, damaged property and then threatened police.   In that regard, police were called to a motel, where Petitioner and his co-workers had been staying, and were advised that Petitioner had kicked in a neighbor's hotel room door and head-butted a window, breaking it.   Police found Petitioner growling and holding a lengthy shard of broken glass, with which he was cutting himself and threatening the officers.   The officers used a taser to subdue and arrest Petitioner.

      Petitioner's immigration attorney subsequently withdrew from representing him, and the immigration hearing was further adjourned, to November 9, 2020.

      On September 16, 2020, Petitioner was again arrested, this time in Auburn, New York, after inappropriately touching an eight-year-old girl and then attacking the child's family members.   Petitioner had been staying in a house occupied by unrelated co-workers and their families, including the aforementioned child who was residing in the house with her parents and uncle.   On the night in question, Petitioner, again under the influence of drugs and/or alcohol, climbed into the bed of the child, who was sleeping in the same bedroom as her father, and began embracing her.   The child's father awoke, punched Petitioner, and ejected him from the bedroom.   Later that night, the child's uncle discovered that Petitioner had locked himself and the child inside a bathroom, where Petitioner was touching the child's chest.   After the uncle rescued the child from Petitioner, Petitioner returned to the bedroom and attempted to strangle the child's sleeping father.   The arresting officers subdued Petitioner with pepper spray after he

attempted to bite one of them and resisted being placed in a patrol car.[5]   Petitioner was charged with Endangering the Welfare of a Child, Criminal Obstruction of Breathing or Blood Circulation and Obstructing Governmental Administration in the Second Degree.

On September 16, 2020, Petitioner was detained by DHS and served a Notice of Custody Determination and Arrest of Alien, indicating that he would be subject to detention pending a final determination of his immigration proceedings.   Petitioner requested a review of that initial custody determination, but during an appearance before an IJ on September 23, 2020, Petitioner withdrew the request while he sought counsel.

Petitioner subsequently retained new counsel, and on October 28, 2020, appeared before an IJ for a custody hearing and removal hearing.   Evidently, at this hearing the IJ placed the burden of proof on Petitioner to demonstrate that he was neither a danger nor a flight risk.   The IJ ruled that Petitioner should remain in custody, on the grounds that he posed a danger to the community, based on the criminal charges that were pending against him in Auburn, New York.[6]   The IJ indicated that Petitioner could request a review of that determination based on a subsequent change in circumstances, once his criminal case was resolved.   Petitioner did not appeal the IJ's determination.

---

[5] ECF No. 5-2 at p. 111.
[6] ECF No. 5-2 at p. 109.

Petitioner subsequently obtained an adjournment of the removal hearing. On January 8, 2021, the removal hearing was conducted. On January 26, 2021, the IJ issued a decision ordering that Petitioner be removed and denying Petitioner's applications for asylum and withholding of removal. Petitioner filed an appeal to the Board of Immigration Appeals ("BIA").

On May 10, 2021, Petitioner pled guilty in City Court, Auburn, New York, to Endangering the Welfare of a Child and Obstructing Governmental Administration in the Second Degree. City Court gave Petitioner a conditional discharge and issued an Order of Protection against him.

That same day, May 10, 2021, Petitioner filed the subject habeas petition, proceeding *pro se*. The Petition indicated, *inter alia*, that Petitioner had been in custody "for over 7 months even though no neutral decision maker . . . ha[d] conducted a hearing to determine whether [his detention was] warranted based on danger or flight risk." ECF No. 1 at ¶ 2. Petitioner asserted that his continued detention, without such a determination concerning risk of flight or dangerousness, "violate[d] the due process clause of the fifth amendment and the eighth amendment's excessive bail clause." ECF No. 1 at ¶ 3. With regard to the alleged due process violation, Petitioner alleged that his detention became unreasonably prolonged after six months, which triggered his right to a hearing at which the Government's would be required to show, by clear and convincing evidence, that he was either a flight risk or a danger to the community, and at which the IJ would be required to consider alternatives to detention and Petitioner's

6

ability to pay a bond.[7]

The Petition also purported to state a claim based on a "substantive due process violation of the [Fifth Amendment, as well as the ] Eighth Amendment."[8]  The Petition did not explain the nature of the alleged substantive due process violation.   As for the alleged Eighth Amendment violation, the Petition asserted that "the government's categorical denial of bail to certain non citizens violates the right to bail encompassed by the Eighth Amendment."[9]

The Petition requested that this Court issue a writ of habeas corpus, or, in the alternative, direct the Government to conduct a new custody hearing at which the Government would bear the burden to show, by clear and convincing evidence, that Petitioner presented a risk of flight or dangerousness.   The Petition alleged that Petitioner had exhausted his administrative remedies "to the extent of the required law," though as mentioned earlier, he never appealed the IJ's custody determination.

On May 23, 2021, Petitioner's custody status was reviewed by a DHS Detention and Deportation Officer, who concluded that Petitioner should remain in detention, stating in pertinent part: "You were arrested for criminal obstruction of breathing or blood circulation and endangering the welfare of a child.   You choked a victim while threatening to kill them.   You are also accused of inappropriate sexual advances on a

---

[7] Pet. at ¶ ¶ 28–34, 39
[8] Pet. at p. 8, p. 9 ¶ 4.
[9] Pet. at ¶ 49.

7

minor child."[10]

On June 9, 2021, Petitioner filed a motion with the IJ for a custody re-determination based on materially changed circumstances, namely, the disposition of his New York criminal charges.

On June 30, 2021, a new custody hearing was held before the IJ, after which the IJ issued a summary decision stating that Petitioner's request was

> [d]enied, because [Arevalo's] pending [criminal] charges have resulted in 2 misdemeanor convictions.   [He] has 3 arrests in the last couple of years and the arrests involve physical harm.   [Arevalo's] removal case is pending appeal but the Court finds [he] remains a danger to the community.   *DHS met their burden by clear and convincing evidence that [Arevalo] is a danger and a flight risk.   [Arevalo] did not meet his burden to show he is not a danger.*

ECF No. 5-2 at p. 102 (emphasis added).   With regard to the quoted language in italics, the IJ later explained that she had made these findings in the alternative, since the parties had disagreed at the hearing as to who had the burden of proof.[11] Petitioner filed an appeal to the BIA.

On July 15, 2021, the IJ issued a Memorandum Decision, purporting to explain her ruling denying Petitioner's motion for a custody re-determination.[12]   In setting forth

---

[10] ECF No. 5-2 at pp. 94–95.
[11] ECF No. 5-2 at p. 110 ("On the record, the Court found the respondent bore the burden of proof to show that he does not pose a risk of danger or flight, and that he did not meet his burden.   The Court made alternative findings that DHS could demonstrate the respondent poses a risk of danger and flight by clear and convincing evidence.").
[12] ECF No. 5-2 at p. 109 ("As explained *infra*, the Court declined to disturb the respondent's custody status because despite the changed circumstances based on his newly finalized convictions, he remains a danger to the community and a flight risk.").

8

the relevant "legal standards," the IJ stated that it was Petitioner's

> burden to establish eligibility for bond by proving that his release would not pose a danger to property or persons, and that he is likely to appear for any future proceeding. . . . If an alien can establish that he is not a danger to the community, then, and only then, should the question of whether the alien poses a risk of flight be considered.

ECF No. 5-2 at p. 110. In a later section of the memorandum decision entitled "Burden of Proof," the IJ reiterated her finding that Petitioner had the burden of proof to show that he was neither a flight risk nor a danger to the community.

The IJ explained that at the hearing, she had made alternative findings, both that the Government had shown that Petitioner was a danger to the community and a flight risk, and that Petitioner had not shown that he was not a flight risk or a danger to the community.[13] The IJ stated, however, that she had ultimately concluded that Petitioner, and not DHS, had the burden of proof,[14] and that Petitioner had failed to show that he was *not* a flight risk or a danger to the community.

The IJ also stated, however, that she affirmatively found that Petitioner was both

---

[13] ECF No. 5-2 at p. 110 ("[T]he Court found the respondent [Arevalo] bore the burden of proof to show that he does not pose a risk of danger or flight, and that he did not meet his burden. The Court made alternative findings that the DHS could demonstrate the respondent poses a risk of danger and flight by clear and convincing evidence.").

[14] ECF No. 5-2 at p. 110 ("The Court acknowledges that it incorrectly held DHS to the hold [sic] the burden of proof and its alternative findings on the record are misstated. The Court clarifies its findings that the respondent [Arevalo] did not demonstrate that he does not constitute a danger to the community or a flight risk). The IJ indicated that she made this determination after concluding that *Onosamba-Ohindo v. Barr*, 2020 WL 5226495 (W.D.N.Y. Sep. 2, 2020) applied only to "applicants who have yet to have a bond hearing and who are subject to INA § 236(a)," and did not apply to motions, such as Petitioner's, for a re-consideration of a custody determination. *See*, ECF No. 5-2 at p. 110 ("As this was not the respondent's first bond hearing, *Onosamba-Ohindo* is inapplicable.").

a flight risk and a danger to the community:[15]

> The Court notes that each of the respondent's arrests were initiated by his physical harm to others.   Additionally, the Court is deeply troubled that these three arrests took place recently and within a two-year timeframe. Based on the overarching circumstances surrounding the respondent's criminal history, the Court finds he poses a danger to the community and that he should remain in custody without bond.
>
> ***
>
> [T]he Court additionally finds that the respondent . . . poses a serious risk of flight [(for reasons that the IJ enumerated)], and there is no amount of bond that could ensure his appearance in future proceedings.

ECF No. 5-2 at p. 111.   Petitioner appealed both the custody determination and the order of removal to the BIA.

On August 30, 2021, the Government filed its response to the habeas petition. ECF No. 5.   Essentially, the Government indicated that Petitioner failed to demonstrate a due process violation, since there was a definite termination point of his proceedings looming, the Government had justified its detention of him, and his detention had not become unduly prolonged.   Alternatively, the Government indicated that Petitioner had already received two custody hearings, the second of which complied with the Second Circuit's recent decision in *Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020) ("*Velasco Lopez*"), in which the Circuit Court held that where an alien was detained for a lengthy period of time (14-15 months) under 8 U.S.C. § 1226(a), the due process clause

---

[15] ECF No. 5-2 at 112 ("[T]he Court finds that Respondent poses a danger to the community, and that he should remain in custody without bond.   The Court also finds he poses a serious risk of flight, and there is no amount of bond that could ensure his appearance in future proceedings.").

10

required that he be given a bond hearing at which the Government would bear the burden of proving by clear and convincing evidence that he was either a danger to the community or a flight risk.[16]   The Government indicated that it had proven, at Petitioner's second custody hearing, by clear and convincing evidence that he was both a danger and a flight risk.[17]   The Court construes the Government's argument on this point to be that Petitioner's claim is moot since he has already received the relief he was demanding.

This Court provided Petitioner an opportunity to file a reply to the Government's papers, but he did not do so.   Consequently, briefing was closed on September 28, 2021.[18]

On September 21, 2021, the BIA remanded the removal order to the IJ for further consideration in light of a new decision by the U.S. Attorney General. ECF No. 9.   On September 28, 2021, the IJ again ordered that Petitioner be removed, and denied his

---

[16] *See, Valez-Chavez v. McHenry*, No. 21-CV-296 (ALC), 2021 WL 3038499, at *1 (S.D.N.Y. July 15, 2021) ("In the context of prolonged detention, the Second Circuit has held that a bond hearing with the government bearing the burden of proving dangerousness and risk of flight by clear and convincing evidence is necessary. *Velasco Lopez v. Decker*, 978 F. 3d 842, 855-856 (2d Cir. 2020)."); *see also, Banegas v. Decker*, No. 21-CV-2359 (VEC), 2021 WL 1852000, at *3 (S.D.N.Y. May 7, 2021) ("In *Velasco Lopez*, the Second Circuit held that the noncitizen's "prolonged incarceration [pursuant to § 1226(a)], which had continued for fifteen months without an end in sight or a determination that he was a danger or flight risk, violated due process" and entitled him to a new bond hearing at which the Government would bear the burden to justify continued detention by clear and convincing evidence. 978 F.3d at 855. The Circuit expressly declined to "establish a bright-line rule for when due process entitles an individual detained under § 1226(a) to a new bond hearing with a shifted burden." *Id*. n.13.").
[17] *See*, Resp't's Mem. of Law, ECF No. 5-4 at p. 1 ("Because Petitioner has already received two bond hearings, the most recent of which complied with the burden-shifting requirement of *Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020), the Petition should be denied.") (emphasis added).
[18] *See, generally*, Fed. R. Civ. P. 6.

applications for withholding of removal. *Id*.   Petitioner's appeal of the IJ's custody determination apparently remains pending before the BIA.   In the meantime, Petitioner remains detained at the Buffalo Federal Detention Facility.

The Court has considered the record and the parties' submissions.

## DISCUSSION

Petitioner challenges his continued detention by way of habeas corpus review under 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir.2003) (quoting 28 U.S.C. § 2241(c)(3)); *see also Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (A petition under § 2241 is the basic method for statutory and constitutional challenges to detention following order of removal).

> When a petitioner brings a habeas petition pursuant to § 2241, the petitioner "bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence." *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011) (citing *Parke v. Raley*, 506 U.S. 20, 31 (1992))[.]
>
> ***
>
> "[T]he equitable principles governing [§ 2241 are] reflected in the plenary discretion vested in habeas courts to 'hear and determine the facts, and dispose of the matter as law and justice require.'" *Pinkney v. Keane*, 920 F.2d 1090, 1093 (2d Cir. 1990) (citing 28 U.S.C. § 2243); *see also United States v. Triestman*, 178 F.3d 624, 629 (2d Cir. 1999) ("The remedies available in § 2241 motions are ... governed by § 2243, which states [ ] that courts entertaining an application for a writ of habeas corpus shall summarily hear and determine the facts and dispose of the matter as law and justice require." (internal quotations omitted)). Issuance of a writ of

>habeas corpus "is an extraordinary remedy" that should only be granted "in the exercise of a sound judicial discretion." *Pinkney*, 920 F.2d at 1093 (citing *Goto v. Lane*, 265 U.S. 393, 401 (1924)).

*Dzhabrailov v. Decker*, No. 20-CV-3118 (PMH), 2020 WL 2731966, at *3 (S.D.N.Y. May 26, 2020) (some citations omitted).

"In pursuing relief, '[p]arties claiming denial of due process in immigration cases must, in order to prevail, allege some cognizable prejudice fairly attributable to the challenged process.'" *Reyes v. King*, No. 19 CIV. 8674 (KPF), 2021 WL 3727614, at *7 (S.D.N.Y. Aug. 20, 2021) (quoting *Garcia-Villeda v. Mukasey*, 531 F.3d 141, 149 (2d Cir. 2008) (internal quotation marks omitted).

### Petitioner is Proceeding *Pro Se*

Petitioner has filed the subject petition proceeding *pro se*, and consequently the Court has construed his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).

### Searls is the Only Proper Respondent

Petitioner has named three respondents in this action. The Government contends that the only proper respondent in this action is Jeffrey Searls, Officer in Charge at the Buffalo Federal Detention Facility, since "he is the person with direct control over the detention of the petitioner."[19] The Court agrees that Searls is the only proper respondent in this action. *See, Gutierrez v. Barr*, No. 20-CV-6078-FPG, 2020 WL 2059845, at *3 (W.D.N.Y. Apr. 29, 2020) ("[T]he only proper respondent is Jeffrey Searls,

---

[19] ECF No. 5-4 at p. 22.

Officer in Charge at the Buffalo Federal Detention Facility. As the 'person with direct control' over Petitioner's detention, *id*., he is the proper respondent given Petitioner's requested relief.") (citing *Hassoun v. Sessions*, No. 18-CV-586, 2019 WL 78984, at *7 (W.D.N.Y. Jan. 2, 2019) (collecting cases).   Accordingly, the Court will dismiss the other two named respondents in this action and direct the Clerk of the Court to amend the caption to list Searls as the sole respondent.

### The Eighth Amendment "Excessive Bail" Claim Lacks Merit

The Petition purports to allege an Eighth Amendment "excessive bail" constitutional violation, based on the allegation that "[t]he government's categorical denial of bail to certain non-citizens violates the right to bail encompassed by the Eighth Amendment."   However, the claim lacks merit since Petitioner has not made any showing whatsoever to support the bare assertion that there is a government policy of "categorical denial of bail to certain noncitizens" that injured him.   Rather, the record indicates that Petitioner's bond requests were considered and denied based on the particular facts of his case which, the IJ found, made him a danger to the community and a flight risk.   Accordingly, the Eighth Amendment claim is denied.

### The Due Process Claims

Petitioner maintains that his continued detention has become "unreasonably prolonged," and that he is therefore entitled, under the Fifth Amendment's Due Process Clause, to an individualized hearing at which the Government must bear the burden of proof to show, by clear and convincing evidence, that he is a flight risk or a danger to

society. Petitioner contends that his continued detention without such a hearing violates both substantive due process and procedural due process.

### Substantive Due Process

A substantive due process violation may occur where an alien who has been detained pending removal can establish that his removal is not reasonably foreseeable. *See, Wang v. Ashcroft*, 320 F.3d at 146 (Observing that in *Zadvydas*, "[i]n order to save § 241 from unconstitutionality, the Supreme Court held that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute. ... Under *Zadvydas*, then, detention of an alien 'once removal is no longer reasonably foreseeable' not only violates § 241, it also violates the Due Process Clause."). However, there is no due process violation where removal remains reasonably foreseeable. *See, id*. ("Wang's due process rights are not jeopardized by his continued detention as long as his removal remains reasonably foreseeable.").

In the instant case, the Petition refers in passing to a substantive due process violation, but Petitioner has not made any showing that his removal is unlikely to occur in the near future. Nor has Petitioner otherwise demonstrated a substantive due process violation. Consequently, to the extent that the Petition is attempting to assert a substantive due process claim, it lacks merit and is denied.

### Procedural Due Process

Petitioner contends that an alien detained under 8 U.S.C. § 1226(a) pending the completion of removal proceedings becomes entitled to a bond hearing, at which the

Government bears the burden of proof by clear and convincing evidence, whenever detention becomes "unreasonably prolonged," meaning longer than six months. The Government responds that Petitioner's detention has not become unreasonably prolonged, but that even if it has, he has already received the type of hearing required by the Second Circuit's decision in *Velasco Lopez*. The Government further contends that Petitioner failed to exhaust his administrative remedies and that the Court should, as a prudential matter, deny the Petition for that reason.

The legal principles applicable to Petitioner's claim have been summarized as follows:

> "Aliens, even aliens whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments." *Plyler v. Doe*, 457 U.S. 202, 210 (1982); see also Mezei, 345 U.S. at 212 ("It is true that aliens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law."). At the same time, Congress has "broad power over naturalization and immigration, [permitting it to] make[ ] rules that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 521 (2003) (quoting Mathews v. Diaz, 426 U.S. 67, 79-80 (1976)). The Due Process Clause is not offended by the mandatory detention of aliens for the "brief period necessary for their removal proceedings," *id*. at 513 (emphasis added), but a detained alien "could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention bec[omes] unreasonable or unjustified." *id*. at 532 (Kennedy, J., concurring).[20]

---

[20] The Court is aware that some district courts in this Circuit maintain that due process requires the Government to always bear the burden of proof when detaining an alien under 8 U.S.C. § 1226(a), even though the Second Circuit has declined to establish any bright-light rule in that regard. *See, e.g., Banegas v. Decker*, No. 21-CV-2359 (VEC), 2021 WL 1852000, at *2 (S.D.N.Y. May 7, 2021) ("Numerous district

> For that reason, this Court "has evaluated procedural due process challenges to immigration detention with a two-step inquiry." *Hemans v. Searls*, 2019 WL 955353, at *5 (W.D.N.Y. Feb. 27, 2019). "As the first step, the Court considers whether the alien's detention has been unreasonably prolonged." *Id*. "If it has not, then there is no procedural due process violation." *Id*. "But if it has, the Court proceeds to step two and 'identifies the specific dictates of due process.'" *Id*. (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). If the government has not provided the procedural safeguards required by the Due Process Clause to an alien subject to unreasonably prolonged detention, "then his continued detention violates procedural due process." *Id*.

*Rasel v. Barr*, No. 19-CV-458, 2019 WL 4257408, at *3 (W.D.N.Y. Sept. 9, 2019).

"When weighing the lawfulness of continued detention of a noncitizen under the Due Process Clause, several factors determine whether the detention is unreasonably prolonged. [Courts,] for example, ha[ve] considered (1) the total length of detention to date; (2) the conditions of detention; (3) delays in the removal proceedings caused by the parties; and (4) the likelihood that the removal proceedings will result in a final order of removal." *Rasel v. Barr*, No. 19-CV-1603, 2020 WL 1905243, at *5 (W.D.N.Y. Apr. 17, 2020) (citations and internal quotation marks omitted).

In this case, the Court need not determine whether Petitioner's detention has become unreasonably prolonged (though it does not believe so, given the facts set forth

---

courts in the Second Circuit, including this Court, have consistently applied these principles to hold that where, as here, the Government seeks to detain a noncitizen pending removal pursuant to § 1226(a), the Fifth Amendment Due Process Clause requires the Government to bear the burden of proving, by clear and convincing evidence, that such detention is justified.") (collecting cases).

above), since it agrees that Petitioner's procedural due process claim became moot in any event following the custody hearing held on June 30, 2021.

As mentioned earlier, to prevail on a due process claim in a habeas proceeding under 28 U.S.C. § 2241, a Petitioner must demonstrate "some cognizable prejudice fairly attributable to the challenged process.'" *Reyes v. King*, No. 19 CIV. 8674 (KPF), 2021 WL 3727614, at *7 (S.D.N.Y. Aug. 20, 2021) (quoting *Garcia-Villeda v. Mukasey*, 531 F.3d 141, 149 (2d Cir. 2008) (internal quotation marks omitted). Here, shortly after the Petition was filed Petitioner received the type of hearing required by *Velasco Lopez*, meaning a hearing at which the Government bore the burden of proof by clear and convincing evidence to justify Petitioner's continued detention. While the IJ ultimately concluded, as a matter of law, that Petitioner had the burden of proof at the hearing, she nevertheless also expressly found, alternatively, that the Government had proven by clear and convincing evidence that Petitioner was both a danger to the community and a "serious flight risk," based on his recent criminal activities (all of which involved the infliction of injury on persons) and convictions (in California and New York),[21] the potential that he would ultimately be removed, and his lack of ties to the community.[22] Consequently, even assuming *arguendo* that the IJ erred in her conclusion regarding the burden of proof, the error was harmless.[23]

---

[21] The Court is unaware of the status of the charges that were pending in Connecticut.
[22] ECF No. 5-2 at pp. 111–112.
[23] *See, Alvarez v. Shanahan*, No. 15-CV-9122 (RA), 2016 WL 3406076, at *2 (S.D.N.Y. June 7, 2016) ("Even accepting Petitioner's argument that *Lora* authorize[d] immigration judges to release aliens

18

Consequently, since Petitioner already received the type of hearing that he was requesting, his procedural due process claim is denied as moot.

CONCLUSION

The Petition is denied, and this action is dismissed.   The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962).   Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.   The Clerk of the Court is directed to amend the caption to list Jeffrey Searls as the sole respondent and to dismiss the other two named respondents.   The Clerk of the Court is further directed to close this action.

So Ordered.

Dated:       Rochester, New York
             October 18, 2021

                              ENTER:


                              /s/ Charles J. Siragusa
                              CHARLES J. SIRAGUSA
                              United States District Judge

---

detained pursuant to § 1226(c) on conditional parole, however, the Petition must nonetheless be denied. The immigration judge found at both the *Lora* hearing and in his written opinion . . . that the Government established by clear and convincing evidence that Petitioner posed a risk of flight and danger to the community. In making that determination, the immigration judge relied on Petitioner's convictions for larceny and narcotics distribution and his history of bench warrants.   . . .   In light of the immigration judge's conclusion that the Government met this burden of proof, any error committed was harmless. *See Garcia-Villeda v. Mukasey*, 531 F.3d 141, 149 (2d Cir. 2008) ("Parties claiming denial of due process in immigration cases must, in order to prevail, 'allege some cognizable prejudice fairly attributable to the challenged process.' " (quoting *Lattab v. Ashcroft*, 384 F.3d 8, 20 (1st Cir. 2004))).").